OPINION
{¶ 1} Defendant-appellant/cross-appellee, James T. McVey, executor of the estate of George E. Roads, et al. ("the Estate"), appeals a decision of the Clinton County Probate Court denying its motion for summary judgment and awarding plaintiff-appellee's motion for partial summary judgment. Plaintiff-appellee/cross-appellant, Johnnie C. Thompson ("Thompson"), cross-appeals. For the reasons outlined below, we reverse.
 {¶ 2} The basic facts are not in dispute. The Roads' family farm is a 150-acre parcel of real property located in Fairfield Township, Highland County and Green Township, Clinton County, in Ohio ("Roads Farm"). George and Mae Roads, brother and sister, acquired their respective undivided one-half interests in the farm in 1962. On March 1, 1988 the two transferred the farm to themselves by means of a survivorship deed.
 {¶ 3} The instant litigation involves an inter vivos trust agreement executed by George and Mae on August 21, 1989 ("Trust Agreement"). Under the terms, George was appointed trustee and Mae successor trustee. Thompson, a family friend who helped with farming and errands, was named second successor trustee and sole residual beneficiary of the Roads Farm and certain farm equipment. The real estate was conveyed by a deed executed that same day. The deed, signed by both George and Mae, transferred the Roads Farm to the "George E. Roads and Mae Roads Trust" as grantee. The grantors also conveyed personal property to the trust, including farm equipment. The conveyances did not transfer any real or personal property to a trustee.
 {¶ 4} Mae died testate on September 7, 1996, leaving her entire estate to George. The following month, George executed an amendment to the trust removing Thompson as successor trustee and trust beneficiary. Later that year, in December, George deeded a one-half interest in the Roads Farm to his nephew, James McVey. The trust was the named grantor in the 1996 warranty deed. George passed away on March 15, 2001.
 {¶ 5} Thompson commenced this action on August 1, 2000. He filed an amended complaint against defendants on August 6, 2001 asking the court to set aside George's amendment to the trust, to set aside the 1996 deed, and to re-convey McVey's one-half interest in the Roads Farm to him. The parties filed cross motions for summary judgment. In a decision dated July 12, 2005, the court awarded summary judgment to Thompson, setting aside the 1996 conveyance to McVey and re-conveying McVey's interest to Thompson. The decision also set aside George's amendment to the trust, and ordered reformation of the defective 1989 deed. The court's ruling, however, was issued subject to the Estate's deferred motion to assert two affirmative defenses. Following a hearing, the court rendered a decision on February 16, 2006 vacating the portion of its July 12 decision which ordered reformation of the defective 1989 deed. The court otherwise affirmed the grant of summary judgment to Thompson. The Estate timely appealed, raising two assignments of error. Thompson cross-appealed, raising three assignments of error.
 {¶ 6} A trial court's decision on summary judgment is reviewed de novo. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. Summary judgment is proper where there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in the that party's favor. Civ.R. 56(C). See, also, Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. The moving party bears the initial burden of informing the court of the basis for the motion, and demonstrating the absence of a genuine issue of material fact. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. If the moving party meets its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id. We are mindful of these considerations in reviewing the following assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE PROBATE COURT ERRED WHEN IT FOUND THAT THE ROADS FARM WAS PART OF THE TRUST CORPUS AND ORDERED CONVEYANCE OF A ONE-HALF INTEREST IN THE FARM TO PLAINTIFF AS TRUSTEE."
 {¶ 9} The Estate maintains that the Roads Farm was not part of the trust corpus because the deed purporting to convey the farm to the trust was invalid and could not be reformed. According to the Estate, the trial court erred in re-conveying McVey's one-half interest in the farm to Thompson as successor trustee because the court inappropriately applied equitable estoppel to incorporate the farm into the trust res.
 {¶ 10} The trial court ruled that the 1989 deed, on its face, was defective to convey the farm to the trust because it failed to transfer title to a trustee. "Without going further," concluded the court, "this would result in Mae's undivided one-half interest going to George, individually, upon Mae's death pursuant to their survivorship deed of March 1, 1988." While the court found that reformation of the 1989 deed was barred by the statute of limitations, it salvaged the defective transfer by invoking the doctrine of equitable estoppel. The court found that George's 1996 deed to McVey, purporting to convey the property from the trust as grantor, evinced George's intent and belief that the 1989 deed effectively conveyed the farm to the trust. According to the court, this was inconsistent with the Estate's position that the 1989 deed was ineffective to transfer the Roads Farm to the trust. Thus, the court ruled that the Estate was estopped from denying the farm was transferred to the trust and made part of the trust corpus.
 {¶ 11} We find that the trial court reached an inappropriate conclusion. The court properly held that the 1989 deed was invalid. A trust is not an entity capable of taking title.[1] Cf. Sloan v.McConahy (1829), 4 Ohio 157, 169. See, also, Commercial Nat. Bank ofCleveland v. Wheelock (1895), 52 Ohio St. 534, 550-51. It is the trustee, not the trust itself, who holds title to trust property. SeeHatch v. Lallo, Summit App. No. 20642, 2002-Ohio-1376, 2002 WL 462862, at *2. The 1989 deed failed to transfer the Roads Farm to a trustee or any capable grantee. Where an attempted transfer of real property is void, the property remains that of the grantor. Gasley v. Separatists'Soc. of Zoar (1862), 13 Ohio St. 144, 154. Therefore, following the defective 1989 transfer, title to the Roads Farm remained in George and Mae. The property was never conveyed into the trust.
 {¶ 12} Not only was the 1989 deed invalid, but the trial court properly held that the instrument was not amenable to reformation. R.C.2305.14 provides that actions not specifically limited in any provision of the code must be brought within ten years after the cause accrued. A cause of action for reformation of a written instrument based upon mistake accrues upon the execution of the instrument. Bryant v.Swetland (1891), 48 Ohio St. 194, 209. The commencement of the statute of limitations is not postponed to the discovery of the mistake. Id. The deed in this case was executed on August 21, 1989. Therefore, the statute of limitations to bring a reformation action on this deed expired on August 21, 1999. The present action was commenced on August 1, 2000, nearly a year after the expiration of the statute of limitations. Reformation of the defective deed is thus barred.
 {¶ 13} We further note that there is no basis for the invocation of estoppel to convey the Roads Farm into the trust. Estoppel by deed "prevents a party to a deed from denying anything recited in that deed if the party has induced another to accept or act under the deed[.]" Black's Law Dictionary (7th Ed.Rev. 1999) 571. This doctrine is inapplicable to the present matter. The evidence does not demonstrate that either George or the Estate denied any statements made in the 1989 deed. Additionally, estoppel by deed has no application where a deed is void ab initio. See Cleveland Boat Service v. City ofCleveland (1955), 102 Ohio App. 255, 261 (reasoning that to find estoppel by deed applicable to a void instrument "would in effect be saying that a right can be created by the mere recitation that it exists"). Finally, Thompson failed to show that he was induced to accept or act under the deed.
 {¶ 14} Equitable estoppel is similarly unsuitable. Equitable estoppel "prevents] one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way." Black's Law Dictionary (7th Ed.Rev. 1999) 571. The essential elements of equitable estoppel are: (1) the nonrelying party made a factual misrepresentation, (2) that was misleading, (3) that induced actual reliance that was reasonable and in good faith, and (4) that caused detriment to the relying party. Chase Manhattan Bank v. Parker, Butler App. No. CA2003-11-299, 2005-Ohio-1801, ¶ 20.
 {¶ 15} The evidence does not show that George intended to mislead or otherwise behave fraudulently in executing the 1989 deed. In addition, Thompson demonstrated no actual reliance upon the defect in the deed. Thompson also failed to prove that he changed his position or otherwise suffered any real detriment, other than losing an interest in property that he never had possession of or to which he never had a valid legal right. Thompson's failure to demonstrate the absence of any factual issues regarding these elements precludes summary judgment in his favor based upon a theory of estoppel.
 {¶ 16} Because the Roads Farm never became part of the trust corpus, Thompson was not entitled to judgment as a matter of law. The trial court thus erred in granting summary judgment to Thompson and in re-conveying McVey's one-half interest in the Roads Farm to him. The Estate's first assignment of error is sustained.
 {¶ 17} Assignment of Error No. 2:
 {¶ 18} "THE PROBATE COURT ERRED WHEN IT FOUND THAT GEORGE ROADS COULD NOT AMEND THE GEORGE E. AND MAE ROADS TRUST AFTER MAE'S DEATH WITHOUT HER `WRITTEN CONCURRENCE,' SET ASIDE THE SECOND AMENDMENT TO THE ROADS TRUST, AND `RECONVEYED' A ONE-HALF INTEREST IN THE ROADS FARM TO PLAINTIFF AS TRUSTEE."
 {¶ 19} The Estate argues that, after Mae's death, George was authorized by the terms of the trust agreement to amend the trust to remove Thompson as successor trustee and trust beneficiary. The Estate concludes that the trial court erred in setting aside George's amendment and in re-instating Thompson's one-half interest in the Roads Farm.
 {¶ 20} "A fundamental tenet for the construction of a trust is to ascertain, within the bounds of the law, the intent of the grantor."Natl. City Bank v. de Laville, Lucas App. No. L-05-1384, 2006-Ohio-5909, ¶ 28. As a general rule, when the language of the trust agreement is unambiguous, a grantor's intent can be determined from the express terms of the trust itself. Id. Where the terms are ambiguous or where the grantor's intent is unclear, a court may consider extrinsic evidence to ascertain the grantor's intent. Id. Whether language in a trust document is ambiguous is a question of law that an appellate court reviews de novo. Id.
 {¶ 21} In a section entitled "Right to Revoke or Change," the Trust Agreement stated the following: "George E. Roads and Mae Roads reserve the right to revoke, amend or change this Trust Agreement at any point during their lifetime." This provision did not specify that such an amendment may only be executed while both George and Mae remained living. In addition, the provision contains no language indicating that a written concurrence was required to amend the trust. In placing no language of limitation or joint consent in the revocation and amendment provision, it is evident that George and Mae intended to permit the survivor between them to continue to exercise the power to revoke or amend the Trust Agreement.
 {¶ 22} Even should we find the language in the revocation provision ambiguous, extrinsic evidence supports the conclusion that George and Mae intended to permit the survivor between them to unilaterally amend the trust. George and Mae initially executed a survivorship deed transferring the Roads Farm to themselves, meaning that the survivor of the two of them was to take the entire interest in the farm. They also executed mirror wills leaving their entire estates to each other. Neither married nor had any children. It is obvious that the two siblings intended their real and personal property to be used for the benefit of one another. To hold that George could not amend the trust after Mae passed away would not be consistent with this intent.
 {¶ 23} We conclude that George acted within the terms of the Trust Agreement when he executed the second amendment. The probate court erred in terminating the amendment and in re-conveying McVey's one-half interest in the Roads Farm to Thompson as trustee. The Estate's second assignment of error is sustained.
 {¶ 24} Cross-Assignment Assignment of Error No. 1:
 {¶ 25} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLEE/CROSS-APPELLANT WHEN IT DID NOT EXPLICITLY FIND THAT THE DEED FROM GEORGE E. ROADS AND MAE ROADS TO THEIR JOINT TRUST EFFECTIVELY CONVEYED TITLE TO THE TRUSTEE."
 {¶ 26} Cross-Assignment Assignment of Error No. 2:
 {¶ 27} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLEE/CROSS-APPELLANT WHEN IT HELD THAT REFORMATION OF THE DEED TO THE JOINT TRUST, CONDITIONALLY REQUESTED BY APPELLEE, WAS BARRED BY THE STATUTE OF LIMITATIONS."
 {¶ 28} In his first cross-assignment of error, Thompson asserts that the deed effectively transferred the Roads Farm to the trustee. Alternatively, in his second cross-assignment of error, Thompson maintains that the defective deed was amenable to reformation. We are not obliged to address these arguments as they have been ruled upon by our disposition of the Estate's first assignment of error. Therefore, we decline to rule on Thompson's first and second cross-assignments of error. See App.R. 12(A)(1)(c).
 {¶ 29} Cross-Assignment Assignment of Error No. 3:
 {¶ 30} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLEE/CROSS-APPELLANT WHEN IT HELD THAT THE FARM EQUIPMENT DID NOT BECOME PART OF THE TRUST RES."
 {¶ 31} Thompson insists that the farm equipment was part of the trust property. In support, he cites the provision in the Trust Agreement specifying that this equipment was to be disbursed to him.[2]
 {¶ 32} The trial court refused to hold that Thompson was entitled to receive the farm equipment, reasoning that there was no clear and convincing evidence that George, as trustee, transferred the equipment to the trust. Generally, there must be separate ownership of equitable and legal interests in the trust res to support a trust. Hatch,2002 WL 462862 at *2. Where the settlor and trustee are the same person, the settlor/trustee must show by word or action that he merely holds legal title to the trust res and that equitable title belongs to someone else. Id.
 {¶ 33} A review of the record does not demonstrate separate ownership of equitable and legal title to the farm equipment. At most, the trustors purported to transfer ownership to the Trust of various named items of personal property, including the farm equipment.[3] As with the defective 1989 deed, this attempted transfer was made to the Trust itself and not to the trustee. The transfer was ineffective as it failed to designate a capable grantee. See Sloan, 4 Ohio at 169;Wheelock, 52 Ohio St. at 550-51. There is no other evidence of transfer of title, such as bills of sale or modified titles. Consequently, the farm equipment never became part of the trust res. Thompson's third cross-assignment of error is overruled.
 {¶ 34} Having sustained the Estate's assignments of error and overruled Thompson's cross-assignments of error, we reverse the judgment of the probate court and remand the case for further proceedings according to law and consistent with this opinion.
 {¶ 35} Reversed and remanded.
YOUNG and BRESSLER, JJ., concur.
[1] R.C. 5804.01, newly enacted by the Ohio Legislature, is set to become effective on January 1, 2007. Although not binding on the present matter, R.C. 5804.01(A) suggests support for this court's conclusion regarding the inability of a trust itself to act as a property grantee. This provision specifies that a trust may be created by "[t]ransfer of property to another person as trustee during the settlor's lifetime or by will or other disposition taking effect upon the settlor's death[.]" (Emphasis added.)
[2] Paragraph (G)(a) under the heading "Management" in the original version of the Trust Agreement stated that, upon the death of George and Mae, the farming equipment was to be transferred to Thompson, including a John Deere tractor, an International Harvester tractor, a harragator, a wheel disk harrow, a John Deere corn planter, an Allis Chalmers corn plow, and a John Deere wheat drill. George's amendment to the Trust Agreement struck this provision and made his relatives the recipients of the farm equipment.
[3] Under the heading "Trust Name and Trust Property," the agreement states that the trustor "does hereby transfer ownership to saidTrust the following items: [farm equipment]." (Emphasis added.)