OPINION
{¶ 1} Plaintiffs-appellants, Glenn R. Bonham and Olive M. Bonham, appeal a decision of the Butler County Court of Common Pleas awarding summary judgment to defendant-appellee, the city of Hamilton, in an action to quiet title. For the reasons outlined below, we affirm.
 {¶ 2} Glenn and Olive Bonham ("the Bonhams") are the owners of approximately 999 acres of land located in Fairfield Township in Butler County, Ohio ("Bonham Farm"). The Bonham family has owned and farmed this land for over 60 years. John and Estella Bonham, relatives of Glenn and Olive, purchased the northern portion of the farm from the Ford Motor Company ("Ford") by way of a deed dated January 17, 1945 ("1945 deed"). The land described in the 1945 deed did not include the tract of land which is the subject of this dispute ("disputed tract"). John and Estella Bonham purchased the southern portion of the farm from Ford by a deed dated October 20, 1948 ("1948 deed"). In addition to the southern portion of the farm, the 1948 deed purported to convey the disputed tract to John and Estella.
 {¶ 3} Although the record does not provide details, at some point the Bonham Farm passed to Glenn and Olive Bonham. The generations of Bonhams peaceably farmed the land, believing themselves to be the owners of the disputed tract. They also maintained and improved the disputed tract, as well as the adjacent roadway.
 {¶ 4} Appellee, the city of Hamilton, obtained the 137-acre parcel of land situated directly to the south of the Bonham Farm from the Hamilton and Rossville Hydraulic Company ("Hydraulic Company") by a deed dated December 27, 1963 ("1963 deed"). The city operates a power plant on this property. The 1963 deed included the disputed tract in the conveyance to the city of Hamilton. The disputed tract consists of approximately 26 acres of land which lies between the southern border of the Bonham Farm and the northern border of a hydraulic canal located on the city of Hamilton's property.
 {¶ 5} The Bonhams instituted a quiet title action in July 2005 after discovering that the city of Hamilton planned to install a bicycle path for public use on the disputed tract of land. The complaint also prayed for reformation of the 1948 deed based upon mutual mistake. The city of Hamilton answered and counterclaimed, asserting quiet title and tortious interference claims against the Bonhams. In August 2005, the city of Hamilton moved for summary judgment. In a decision dated January 18, 2006, the trial court granted the city's motion. The Bonhams timely appealed, raising one assignment of error.
 {¶ 6} We review a trial court's decision on summary judgment de novo.Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. Summary judgment is proper where there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. Civ.R. 56(C). See, also, Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66. The moving party bears the initial burden of informing the court of the basis for the motion, and demonstrating the absence of a genuine issue of material fact. Dresherv. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107. If the moving party meets its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id. We are mindful of these standards in reviewing the Bonhams' sole assignment of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS WHEN IT GRANTED THE MOTION FOR SUMMARY JUDGMENT OF THE DEFENDANT-APPELLEE."
 {¶ 9} The Bonhams' single assignment of error raises three issues for our review. First, the Bonhams maintain that the greater weight of authority supports the application of adverse possession against a state and its political subdivisions. The Bonhams also argue that the trial court failed to address the distinction made in a number of Ohio cases regarding public versus proprietary use of municipal land. The Bonhams point out that few of these cases deny the application of adverse possession against a sovereign when the disputed property is held for a proprietary purpose.
 {¶ 10} The city of Hamilton does not dispute that the Bonhams can demonstrate the elements of adverse possession regarding the disputed tract. Rather, the city insists that adverse possession cannot be applied to property owned by a municipality in the state of Ohio.
 {¶ 11} To acquire real property by adverse possession, a party must establish, by clear and convincing evidence, that he has possessed the land in an open, notorious, exclusive, adverse, and continuous manner for at least 21 years. Grace v. Koch, 81 Ohio St.3d 577, 579,1998-Ohio-607. The burden of establishing the elements necessary to acquire title by adverse possession rests heavily upon the person claiming such ownership. Vaughn v. Johnston, Brown App. No. CA2004-06-009, 2005-Ohio-942, ¶ 9.
 {¶ 12} The Bonhams cite two 19th century cases in which adverse possession was applied to municipal lands. See City of Cincinnati v.First Presbyterian Church (1838), 8 Ohio 298, and City of Cincinnati v.Evans (1855), 5 Ohio St. 594. However, we note that "[t]he modern trend in Ohio is that adverse possession cannot be applied against the state and its political subdivisions." Anderson v. Village of Alger (May 14, 1999), Hardin App. No. 6-98-10, 1999 WL 378377 at *3. (Emphasis sic.) See, also, Law v. Lake Metroparks, Lake County App. No. 2006-L-072,2006-Ohio-7010, ¶ 10; Nusekabelv. Cincinnati Pub. School Emp. CreditUnion (1997), 125 Ohio App.3d 427, 434-35; 1540 Columbus Corp. v.Cuyahoga Cty. (1990), 68 Ohio App.3d 713, 718; Haynes v. Jones (1915),91 Ohio St. 197, 202. The sovereign is said to hold the property in trust for the public, which should not suffer should the sovereign's negligence or inattention expose the property to a claim of adverse possession. See Nusekabel at 436.
 {¶ 13} A survey of Ohio law reveals two exceptions to the general rule that adverse possession is not applicable to municipal property. One exception was noted by the Ohio Supreme Court in Heddelston v.Hendricks (1895), 52 Ohio St. 460. In that case, the Supreme Court held that a property owner of land adjacent to a township road did not acquire ownership of the portion of the road that the adjacent owner had fenced off. In reaching this conclusion, the Supreme Court limitedChurch and Evans:
 {¶ 14} "The general rule is that the statute of limitations does not apply as a bar to the rights of the public, unless expressly named in the statute, for the reason that the same active vigilance cannot be expected of it as is known to characterize that of a private person, always jealous of his rights, and prompt to repel any invasion of them. But in the cases of City of Cincinnati v. First Presbyterian Church andCity of Cincinnati v. Evans, a different rule was applied[.] * * * But these cases are regarded as exceptional, and confined to municipalcorporations in cases where their possession has been disturbed by theerection of large and valuable structures under such circumstances as preclude the idea that the encroachment was simply permissive on the part of the municipality." (Citations omitted.) (Emphasis added.)Heddelston at 465.
 {¶ 15} As the facts do not indicate that the Bonhams erected any large or valuable structures on the disputed land, this exception is inapposite to the present matter.
 {¶ 16} Another exception is found in R.C. 2305.05. Under the statute, a municipal corporation is not immune to adverse possession of its streets and highways where a street or highway has not been open for public use and an adjoining landowner fences in all or a portion of the street and remains in open, uninterrupted use of the enclosed area for the requisite 21 year period. As the case at bar does not involve a municipal street or highway, this exception is inapplicable here.
 {¶ 17} The trial court examined Ohio case law and the two aforementioned exceptions to the general rule, and noted that this court has not addressed whether adverse possession can be applied to property owned by a political subdivision. In deciding the issue, the trial court held that the Bonhams were barred from pursuing their adverse possession claim against the city of Hamilton.
 {¶ 18} We agree with the trial court's determination. As stated, this case neither involves land upon which large and valuable structures were built, nor a fenced off municipal street or highway. Therefore, the two exceptions to the general rule that adverse possession does not apply to a municipality are not present. The decision of the trial court comports with the accepted principle that adverse possession is disfavored in the law. See Grace v. Koch, 81 Ohio St.3d at 580. Such a rule also protects the general public, the beneficiaries of public property. SeeNusekabel, 125 Ohio App.3d at 436. Finally, limiting adverse possession of sovereign lands is practical and reasonable where the sovereign cannot be expected to employ "the same active vigilance * * * as is known to characterize that of a private person, always jealous of his rights and prompt to repel any invasion of them." Heddelston,52 Ohio St. at 465; Beard v. Beatty (1914), 3 Ohio App. 354, 358.
 {¶ 19} Regarding the Bonhams' argument that the trial court failed to make a distinction between public and proprietary use of government land, we refer to an opinion rendered by the First District Court of Appeals:
 {¶ 20} "We also do not believe that a distinction based on whether a municipality uses the property for a proprietary or a governmental function is warranted in modern times. Undeveloped land is a precious commodity in today's crowded world, and a municipality should not lose its rights in a property, or the property itself, because it has not yet determined a suitable purpose for the land." (Citation omitted.)Nusekabel, 125 Ohio App.3d at 436.
 {¶ 21} We agree that the distinction between public and proprietary use is not warranted in cases involving adverse possession of municipal lands. The Bonhams provided no binding authority arguing in favor of making this distinction in analyzing such cases.
 {¶ 22} The second issue for our consideration involves the Bonhams' claim that the city of Hamilton should be equitably estopped from asserting title to the disputed tract because the city's inaction misled and induced reliance on the part of the Bonhams to their detriment. The Bonhams protest that the city failed to object or otherwise assert its ownership interest while the Bonhams maintained the roadway adjacent to the disputed tract, bore the costs of upkeep and other improvements on the tract, and farmed the land for over 55 years. The Bonhams also insist that Hamilton never claimed ownership of the disputed tract on the numerous occasions when the Bonhams and the city dealt with issues related to the tract.
 {¶ 23} Equitable estoppel "prevents] one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way." Black's Law Dictionary (7th Ed.Rev. 1999) 571. The essential elements of equitable estoppel are: (1) the nonrelying party made a factual misrepresentation, (2) that was misleading, (3) that induced actual reliance that was reasonable and in good faith, and (4) that caused detriment to the relying party. Thompson v. McVey, Clinton App. Nos. CA2006-03-006,-009, 2006-Ohio-7036, ¶ 14.
 {¶ 24} Equitable estoppel against a municipality is recognized only in "exceptional cases where there has been such conduct on the part of the public authorities, relied and acted upon by an adjacent owner, as will estop the public from retaking possession" of the disputed property.Joseph v. City of Akron (1925), 19 Ohio App. 412, 415. The claimant must establish that a representative of the municipality made a promise or misrepresentation that was within the representative's authority.Figler v. City of Willoughby (Nov. 10, 1994), Lake App. Nos. 93-L-167,-168, 1994 WL 757942, at *2.
 {¶ 25} Upon reviewing the record, we find no evidence that the city or its representatives misled the Bonhams. As stated, the Bonhams insist that the city remained silent while the Bonhams farmed and maintained the disputed tract. However, the evidence shows that the city did not sit idly by, failing to engage in acts of ownership. The city used and maintained the canal and the gravel road which, according to the affidavit of civil engineer Arthur Balph, lies on the disputed tract. The city holds a license from the Federal Energy Regulatory Commission ("FERC") to operate the hydraulic plant as a public utility. The city has engaged in numerous activities, including investing millions of dollars to maintain the canal and surrounding areas, in association with the power plant. The city's retention of its FERC license and its ability to operate the power plant and provide electricity for city inhabitants is conditioned upon the city's continued maintenance and ownership of the canal.
 {¶ 26} The city also presented evidence that it uses and maintains the gravel road that runs adjacent to the canal. The city acknowledges that it permitted the Bonhams to access the canal to irrigate their crops, to farm nearby land owned by the city, and to operate vehicles on the adjacent gravel road. Although the city did not demand payment for access to its property, it argues that permitting the Bonhams access does not exemplify a desire to relinquish its property rights.
 {¶ 27} The record also shows that, once the issue regarding ownership of the disputed tract was raised, the city obtained a survey and a record title search. The comprehensive survey established the boundaries of the property conveyed to the city of Hamilton by the 1963 deed. Surveyor Arthur Balph determined that the city owned the disputed tract of land. The title search, performed by attorney G. Robert Hines, shows that the city held free and clear title to the property. The search revealed no recorded easements, covenants, or restrictions upon the city's land.
 {¶ 28} If anything, the Bonhams were misled by the 1948 deed, by which Ford purported to convey the disputed tract to John and Estella Bonham. Ford did not hold title to this tract and was therefore powerless to convey it. But such a misrepresentation cannot be attributed to the city of Hamilton. In fact, the city's recorded deed from the Hydraulic Company provided notice of the city's ownership of the disputed tract since 1963.
 {¶ 29} We conclude that the city did not engage in acts, through a representative acting within his or her authority, which induced or misled the Bonhams.
 {¶ 30} The final issue for our review involves the Bonhams' assertion that the trial court erred in denying their claim for reformation of the 1948 deed on the grounds that the original parties to the deed were necessary parties to the action. The Bonhams emphasize that the question has not been addressed by Ohio courts, and that there is a split of authority among other jurisdictions on the issue.
 {¶ 31} R.C. 2305.14 provides that actions not specifically limited in any provision of the Code must be brought within ten years after the cause accrued. A cause of action for reformation of a written instrument based upon mistake accrues upon the execution of the instrument.Thompson, 2006-Ohio-7036 at ¶ 12, citing Bryant v. Swetland (1891 ),48 Ohio St. 194, 209. The commencement of the statute of limitations is not postponed to the discovery of the alleged mistake. Thompson at ¶ 12.
 {¶ 32} The deeds conveying the northern and southern portions of the Bonham Farm were executed on January 17, 1945 and October 20, 1948, respectively. Therefore, the statute of limitations to bring a reformation action on these deeds expired on January 17, 1955 and October 20, 1958, respectively. The present action was commenced on July 13, 2005, well after the expiration of the limitations periods. Reformation of the deeds is thus barred.
 {¶ 33} Because reformation is properly barred by the statute of limitations, we need not address the issue of whether the original grantors are necessary parties to an action for reformation of a deed.
 {¶ 34} The Bonhams' sole assignment of error is overruled.
 {¶ 35} Judgment affirmed.
WALSH and YOUNG, JJ., concur.
 JUDGEMENT ENTRY
The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.
It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Judgment Entry shall constitute the mandate pursuant to App.R. 27.
Costs to be taxed in compliance with App.R. 24.