[Cite as *Jackson v. Kinkaid*, 2026-Ohio-1135.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

| | | |
|---|---|---|
| City of Jackson, Ohio, | : | Case No. 25CA11 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| Robert Kinkaid, | : | |
| Defendant-Appellant. | : | **RELEASED 3/25/2026** |

_____

<u>APPEARANCES</u>:

Richard M. Lewis and Suzanna T. King, The Law Firm of Richard M. Lewis, LLC, Jackson, Ohio, for appellant.

Joseph D. Kirby, Cole Kirby & Associates, Jackson, Ohio, for appellee.
_____
Hess, J.

**{¶1}** Robert Kinkaid appeals a summary judgment of the Jackson County Common Pleas Court declaring the city of Jackson, Ohio, the owner of certain real property and all structures located thereon free of all claims of easement or other interest by Kinkaid, permanently enjoining him from trespassing on the property, and dismissing his counterclaims with prejudice. Kinkaid presents one assignment of error asserting that the trial court erred by granting summary judgment to the city, declaring the city the owner of the property free of all claims or interest of him, and dismissing his counterclaims related to the property. For the reasons which follow, we affirm the trial court's judgment.

## I.  FACTS AND PROCEDURAL HISTORY

{¶2}   On January 11, 2024, the city filed a complaint against Kinkaid which alleged the following. The city is a political subdivision of the State of Ohio and has, at all relevant times, been the owner of real property we will refer to as "Parcel A" in this decision.  Kinkaid has, at all relevant times, been the owner of real property we will refer to as "Parcel B" in this decision.  Parcels A and B are located in the city, and Parcel A is part of the larger area of Hammertown Lake and surrounding real property, which is the main source of drinking water for the city. The city's use of Parcel A "constitutes a valid governmental purpose, to wit, the supply of water to" city residents.  Kinkaid constructed a building on the city's property and otherwise trespassed on it, resulting in damages to the city. The city sought a declaration that Kinkaid had no right to access or otherwise use the city's property, an injunction restraining Kinkaid from further trespassing on the city's property, and an order requiring Kinkaid to remove the structure.

{¶3}   Kinkaid filed an answer in which he admitted the city was a political subdivision and the record title owner of Parcel A but denied that it was the true and lawful owner of a 1.1650 acre portion of Parcel A (the "Disputed Area").  He filed counterclaims for adverse possession, prescriptive easement, implied easement by prior use or by necessity, equitable estoppel, negligent misrepresentation, and unjust enrichment in which he alleged the following. Parcels A and B are adjacent to each other; Parcel A is west of Parcel B.  The Disputed Area is "at the easterly side" of Parcel A, "adjoining Parcel B."  Until approximately 1950, Parcels A and B were under the common ownership of Earl and Elsie Scurlock.  Around March 1953, the Scurlocks transferred Parcel A to the city's predecessor-in-title. At the time, there was a wooden post and wire fence running

north/south roughly parallel to, and about 32 feet west of, the property line between Parcels A and B. The fence line is the west line of the Disputed Area. At some point, the city or its predecessor-in-title installed a gate, the purpose of which was to indicate that the portion of Parcel A west of the fence line was private property and to block unauthorized persons from entering.  Remnants of the fence remain today.

**{¶4}**    Between 1974 and 1997, Kinkaid's predecessors-in-title erected a mobile home with a wood deck in the Disputed Area ("Mobile Home 1") and a second mobile home with a wood deck immediately east of Mobile Home 1 ("Mobile Home 2").  In 1998, when Kinkaid bought Parcel B, Mobile Home 1 was still in the Disputed Area and rented to tenants, and shortly after the purchase, he caused the tenants to remove Mobile Home 1.  He also erected a mobile home on Parcel B which is his residence.  In 2002-2003, he constructed a "56' x 80' garage" where Mobile Home 2 was formerly located.  The garage is close to the east line of the Disputed Area and so situated that ingress and egress to it is impossible without crossing the Disputed Area. In 2007, he constructed a "96' x 24" garage in the Disputed Area where Mobile Home 1 was formerly located.  Prior to 1995, the city, acting on the belief that his predecessors-in-title owned the Disputed Area, installed a water tap in the Disputed Area to service Mobile Home 1. Kinkaid's predecessors-in-title ran a water line from the tap to Mobile Home 1.  The line still exists, and since its installation, the city has billed, and Kinkaid or his predecessors-in-title have paid, all water usage through it.  When Kinkaid constructed the two garages, he relied on the city's past actions in treating the Disputed Area as the property of his predecessors-in-title.

{¶5}   Kinkaid asked the court to: (1) declare him the owner of the Disputed Area; (2) declare that he was entitled to a permanent easement over the Disputed Area allowing him, his heirs, and his assigns the right to erect, maintain, and improve buildings in the Disputed Area; (3) declare that he was entitled to a permanent easement over the Disputed Area to allow ingress and egress by vehicle to the 2002 garage and grant him judgment for the costs of erecting and demolishing the 2007 garage and erecting a similar one on Parcel B; (4) grant him judgment for the cost of erecting and demolishing both garages and reconstructing similar garages on Parcel B; or (5) grant him judgment in an amount equal to the value of the improvements made on the Disputed Area.

{¶6}   On February 28, 2025, the city filed a motion for leave to file a motion for summary judgment along with a motion for summary judgment.  The city maintained that it was entitled to judgment against Kinkaid for his continuing trespass on its property. The city claimed that as a political subdivision, it was not subject to the loss of its property by adverse possession or prescription.  The city asserted that Kinkaid's counterclaim raised "a series of cases which may be described as the 'large and valuable structures' exception" to this rule. The city asserted that without getting into the factual issue of whether the 2007 garage constituted a large and valuable structure and ignoring that the cases Kinkaid relied upon were "not now the accepted rule for adverse possession against a municipality," his "insurmountable problem" in applying them was that he "does not satisfy the requirements of adverse possession, specifically continuous possession of twenty-one years."

{¶7}   The city claimed that for the large and valuable structures exception, Kinkaid had to establish by clear and convincing evidence that he used the Disputed Area

openly, notoriously, adversely to the city's property rights, continuously, and for at least 21 years. The city suggested Kinkaid could not rely on the exception because the only event which could have triggered it happened in 2007, i.e., less than 21 years ago, arguing that Kinkaid did not allege there was a permanent structure on the Disputed Area until he built a garage on it that year. The city asserted that the mobile home on the Disputed Area, which was removed about nine years before Kinkaid built the 2007 garage, was not a structure, and that Kinkaid's "miscellaneous and periodic use" of the Disputed Area prior to 2007, which was "not evidenced by buildings, fence or crops cannot be defined as open, notorious or hostile." The city asserted Kinkaid could not tack the use by his predecessors-in-title. The city claimed his predecessors were barred from claiming ownership by adverse possession, and their use did not rise to the level required for adverse possession. The city also asserted Kinkaid's predecessors could not claim the large and valuable structures exception because no structure was constructed on the Disputed Area until 2007 during Kinkaid's ownership.

{¶8}   The city asserted that there were no facts to support the counterclaim for implied easement by prior use or by necessity. In addition, the city claimed municipal property cannot be conveyed as a result of equitable estoppel or negligent misrepresentation. The city asserted that "[t]o designate the claim as one of Equitable Estoppel or Negligent Misrepresentation is nothing more than renaming the claim of ownership by adverse possession, which, as argued above, is not permitted against a political subdivision."   The city also asserted that subject to exceptions not applicable here, it only had authority to convey property in accordance with R.C. 721.03 and that "Ohio law does not recognize inattentiveness or negligence as a method for municipal

property to be conveyed nor does a municipality have authority to gift or otherwise convey property contrary to Ohio law."

{¶9}   In addition, the city asserted that a claim of unjust enrichment cannot be made against a political subdivision. The city maintained that unjust enrichment, while an equitable remedy, is based on theories of contract, and that the contractual powers of a municipal corporation are limited. The city relied on *Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio App.3d 33 (8th Dist. 1998), for the position that all governmental liability ex contractu must be express and entered into in the prescribed manner and that a municipality is not liable on an implied contract or on a quantum meruit by reason of benefits received.  The city relied on *Aquatic Renovations Sys., Inc. v. Village of Walbridge*, 2018-Ohio-1430 (6th Dist.), for the position that because a municipality may not be held liable on the basis of a quasi-contract, it follows that a claim of quantum meruit or unjust enrichment against a municipality fails.  The city asserted that it did not authorize or want the garage in the Disputed Area and could not be liable solely because it "may have received a benefit from an unsolicited act and trespass."

{¶10}  On March 3, 2025, the city filed another motion for leave to file a motion for summary judgment.  The next day, the trial court issued an entry granting the city's motion for leave, though the last line of the entry incorrectly states that "Defendant may file its Motion for Summary Judgment instanter" instead of the plaintiff. On April 28, 2025, Kinkaid filed a motion for summary judgment.

{¶11}  On May 1, 2025, the trial court issued an entry on the city's summary judgment motion. The court found Kinkaid filed a memorandum contra "out of rule," had not sought or obtained leave to file it late, and had not demonstrated excusable neglect

for missing the deadline to respond to the motion.  However, the court found that even considering the memorandum contra, there were no genuine issues of material fact, and the city was entitled to judgment as a matter of law.  Because the record does not reflect that Kinkaid filed a memorandum contra, it appears that when the court referred to one, it was actually referring to Kinkaid's motion for summary judgment.

{¶12}  The court cited *1540 Columbus Corp. v. Cuyahoga Cty.*, 68 Ohio App.3d 713 (8th Dist. 1990), for the proposition that political subdivisions and municipalities are immune to adverse possession claims at common law. The court found that in *Houck v. Bd. of Park Commrs. of the Huron Cty. Park Dist.*, 2007-Ohio-5586, the Supreme Court "held that adverse possession does not apply to the rights of the public." Citing *Hall v. Dasher*, 2022-Ohio-1735 (5th Dist.), the court found "[t]he modern approach taken by appellate courts is that state and political subdivisions are not subject to property loss by adverse possession and have restricted the rulings of early Supreme Court decisions to instances where large and valuable structures have been built on city property [sic]."  The court found that even if the doctrine of adverse possession was applicable in this instance, Kinkaid's "claim would still fail since it cannot demonstrate compliance with the elements of adverse possession."  The court found that Kinkaid "cannot demonstrate that his use of the property has been for more than 21 years."  The court found that he "also failed to demonstrate that he meets the exception for large and valuable structures."  In addition, the court found Kinkaid's "claim for an easement" failed.  The court found there were no factors demonstrating he had an express or implied easement, and "[a] party seeking a prescriptive easement must demonstrate by clear and convincing evidence open, notorious, adverse and continuance [sic] use of the easement for 21 years."

{¶13} On May 8, 2025, the court issued an order and judgment entry awarding judgment to the city and dismissing Kinkaid's counterclaims with prejudice. The entry provides that the city is the owner of the Disputed Area and all structures located thereon, free of all claims of easement or other interest by Kinkaid, his successors, or his assigns. The entry also provides that Kinkaid is permanently enjoined from trespassing on the Disputed Area.  This appeal followed.

## II.  ASSIGNMENT OF ERROR

{¶14}  Kinkaid presents one assignment of error:

The trial court erred by granting summary judgment to Plaintiff-Appell[ee] the City of Jackson (May 1, 2025 Entry on Plaintiff's Motion for Summary Judgment, p. 2) and declaring the City the owner of the real property in dispute free of all claims or interest of Defendant-Appellant Robert Kinkaid, and dismissing Defendant-Appellant's Counterclaims related to the property.  (May 8, 2025 Order and Judgment Entry).

## III.  LAW AND ANALYSIS

{¶15}  In the sole assignment of error, Kinkaid contends the trial court erred by granting summary judgment to the city, declaring it the owner of the real property in dispute free of all claims or interest of him, and dismissing his counterclaims related to the property.

### A.  Standard of Review

{¶16}  We review a trial court's decision on a motion for summary judgment de novo.  *Harter v. Chillicothe Long-Term Care, Inc.*, 2012-Ohio-2464, ¶ 12 (4th Dist.).  We afford no deference to the trial court's decision but rather conduct an independent review to determine whether summary judgment is appropriate.  *Id.*  "A summary judgment is appropriate only when: (1) there is no genuine issue of material fact; (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving

party, and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a matter of law." *Hawk v. Menasha Packaging*, 2008-Ohio-483, ¶ 6 (4th Dist.).

**{¶17}** "The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law." *DeepRock Disposal Solutions, LLC v. Forté Prods., LLC*, 2021-Ohio-1436, ¶ 68 (4th Dist.). "To meet its burden, the moving party must specifically refer to 'the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action,' that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims." *Id.*, quoting Civ.R. 56(C). "Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial." *Id.*

### B. Adverse Possession

**{¶18}** "Under the doctrine of adverse possession, a plaintiff can acquire legal title to another's real property if he or she proves exclusive possession and open, notorious, continuous, and adverse use for a period of 21 years." *Houck*, 2007-Ohio-5586, at ¶ 10, citing *Grace v. Koch*, 81 Ohio St.3d 577, 580-581 (1998).

### 1. Kinkaid's Position

**{¶19}** Kinkaid contends the trial court erred when it granted summary judgment to the city on his adverse possession counterclaim for two reasons.

**{¶20}** First, Kinkaid maintains that the city failed to meet its burden to show the absence of a genuine issue of material fact regarding whether the Disputed Area serves

a public purpose, whether adverse possession interferes with a public purpose, and whether the city has an obligation to monitor and protect its interest in the property. He claims the trial court erroneously failed to consider these issues and instead summarily and incorrectly concluded that political subdivisions are immune to adverse possession claims as a matter of law. Kinkaid claims the trial court relied on *Houck*, but the only issue in that case was whether property owned by a park district established under R.C. Chapter 1545 could be acquired by adverse possession. Kinkaid asserts that *Houck* acknowledged the Supreme Court allowed acquisition of publicly owned property in other cases but did not expressly overrule them or "establish a bright-line rule that political subdivisions are always immune to adverse possession claims regardless of the facts of the case." Instead, *Houck* distinguished these cases and held that a park district established under R.C. Chapter 1545 was not subject to adverse possession after discussing the public purpose of park districts, how acquisition of park district property by adverse possession would interfere with its public purpose, and how the nature of park districts make their boundaries difficult to monitor. Relying on *1540 Columbus Corp.*, Kinkaid also claims courts which have found a political subdivision immune to an adverse possession claim considered evidence regarding the public purpose served by the land in dispute.

{¶21} Thus, Kinkaid claims that determining whether a political subdivision's property is immune to an adverse possession claim requires examination of whether a public purpose is served by the property in dispute, whether adverse possession would interfere with such purpose, and whether the political subdivision had an obligation to monitor its property more closely than it did. He asserts that "[i]f consideration of such

fact issues were not required, the Supreme Court would not have so narrowly limited its holding in *Houck* to park districts," the Supreme Court would have expressly overruled prior cases allowing acquisition of land by adverse possession, and the Supreme Court and appellate courts considering this issue would have made a clear statement that a party can never acquire an interest in a political subdivision's property by adverse possession. He asserts that there is no uncontroverted evidence that the Disputed Area serves a public purpose or evidence that adverse possession would interfere with a public purpose. He asserts that there is no evidence regarding whether the city could and should have been more vigilant in monitoring and protecting its property interest in the Disputed Area. Thus, the trial court lacked authority to grant the city summary judgment on his adverse possession counterclaim.

{¶22} Second, Kinkaid maintains that the trial court erred in finding as a matter of law that he could not satisfy the elements of an adverse possession claim because there are genuine issues of fact material to such claim. Specifically, he asserts that the court erred in finding he could not demonstrate that his use of the property has been for more than 21 years. Kinkaid asserts that his counterclaim "alleges more than 21 years of exclusive possession and adverse, continuous, open and notorious use of the Disputed Area by him, or his predecessors-in-interest" and that he can satisfy the 21 years requirement by tacking on time his predecessors-in-interest encroached on the Disputed Area. Thus, the facts alleged are sufficient to establish that he or his predecessors-in-interest engaged in the exclusive possession and adverse, continuous, open and notorious use of the Disputed Area for more than 21 years.

## 2. Analysis

**{¶23}** "The general rule is that adverse possession does not apply against the state." *Houck*, 2007-Ohio-5586, at ¶ 18, citing *Haynes v. Jones*, 91 Ohio State 197 (1915), syllabus. "Early cases recognized that the state, as a sovereign, was not subject to adverse possession; but they declined to extend that immunity to other subdivisions of the state." *Id.*, citing *Lessee of Cincinnati v. First Presbyterian Church*, 8 Ohio 298, 310 (1838) ("*First Presbyterian*") (municipalities are not immune from adverse possession); *Cincinnati v. Evans*, 5 Ohio St. 594 (1855) ("*Evans*") (relied on *First Presbyterian* to hold that municipalities are not immune from adverse possession); and *Oxford Twp. v. Columbia*, 38 Ohio St. 87 (1882) ("*Oxford*") (relied on *First Presbyterian* to hold that townships are not immune from adverse possession).

**{¶24}** However, in *Heddleston v. Hendricks*, 52 Ohio St. 460 (1895), the Supreme Court "held that an individual could not adversely possess a public road established by a county." *Houck* at ¶ 19. "The court in *Heddleston* reasoned that 'the statute of limitations does not apply as a bar to the rights of the public, unless expressly named in the statute, for the reason that the same active vigilance cannot be expected of it as is known to characterize that of a private person, always jealous of his rights, and prompt to repel any invasion of them.'" *Id.*, quoting *Heddleston* at 465. "*Heddleston* also limited the holding in *First Presbyterian* and *Evans,* declaring that 'these cases are regarded as exceptional, and confined to municipal corporations in cases where their possession has been disturbed by the erection of large and valuable structures under such circumstances as preclude the idea that the encroachment was simply permissive on the part of the municipality.'" *Id.*, quoting *Heddleston* at 465.

**{¶25}** In *Brown v. Monroeville Local School Dist. Bd. of Edn.*, 20 Ohio St.2d 68 (1969), the Supreme Court "addressed whether adverse possession could be invoked against a school district." *Houck* at ¶ 21. "The court determined that a school board, under R.C. 3313.17, had authority to acquire, hold, possess, and dispose of real property. Thus, the court concluded that a school board consented to a suit with respect to real property, including an action claiming property by adverse possession." *Id.* "However, since the decision in *Brown,* at least half of Ohio's appellate districts have held that adverse possession *cannot* be applied against the state *or* its political subdivisions." (Emphasis in original.) *Id.* at ¶ 22, citing *Anderson v. Alger*, 1999 WL 378377, *3 (3d Dist. May 14, 1999); *Bonham v. Hamilton,* 2007-Ohio-349, ¶ 12 (12th Dist.); *Law v. Lake Metroparks,* 2006-Ohio-7010, ¶ 21 (11th Dist.); *Nusekabel v. Cincinnati Pub. School Emps. Credit Union, Inc.*, 125 Ohio App.3d 427, 436 (1st Dist.1997); *1540 Columbus Corp.*, 68 Ohio App.3d at 720 (8th Dist.); and *Bryan v. Killgallon*, 1981 WL 5791, *2 (6th Dist. Sept. 25, 1981). "In coming to this conclusion, many courts have determined that '*Brown* is limited on its facts to property held by the board of education, the property of which is not legal highway or street. *Brown* does not disturb the general rule that political subdivisions of the state are not subject to loss of their streets and highways.'" *Id.*, quoting *1540 Columbus Corp.* at 719, and citing *Wyatt v. Ohio Dept. of Transp.*, 87 Ohio App.3d 1, 5 (11th Dist. 1993), and *Nusekabel at* 435.

**{¶26}** Thus, "'[t]he modern trend in Ohio is that adverse possession *cannot* be applied against the state and its political subdivisions.'" (Emphasis in original.) *Bonham* at ¶ 12, quoting *Anderson* at *3. "The sovereign is said to hold the property in trust for

the public, which should not suffer should the sovereign's negligence or inattention expose the property to a claim of adverse possession." *Id.*, citing *Nusekabel* at 436.

**{¶27}** At the trial level, Kinkaid acknowledged "the time-honored general rule that adverse possession does not run against the government" but asserted that a large and valuable structures exception to the general rule applied. The trial court found that Kinkaid failed to demonstrate he met this exception, and Kinkaid did not challenge this finding in his appellate brief.  Kinkaid effectively challenges this finding in his reply brief, but "the purpose of a reply brief is to afford the appellant an opportunity to respond to the appellee's brief, not to raise an issue for the first time." *State v. Ross*, 2017-Ohio-9400, ¶ 17 (4th Dist.).  "'Appellate courts generally will not consider a new issue presented for the first time in a reply brief.'"  *Id.*, quoting *State v. Spaulding*, 2016-Ohio-8126, ¶ 179. "'"The appellant cannot raise an issue for the first time in a reply brief, and thus effectively deny the appellee an opportunity to respond to it."'"  *Id.*, quoting *State v. Nguyen*, 2013-Ohio-3170, ¶ 34 (4th Dist.), quoting *Nemeth v. Nemeth*, 2008-Ohio-3263, ¶ 22 (11th Dist.).  Therefore, we decline to consider Kinkaid's challenge to the finding that he failed to demonstrate he met the exception for large and valuable structures.  And given the absence of any exception to the general rule that adverse possession cannot be applied against a political subdivision, the trial court properly granted summary judgment to the city, which is undisputedly a political subdivision, on Kinkaid's adverse possession counterclaim.

**{¶28}** *Houck* does not compel a different conclusion.  In that case, the appellants filed a quiet title action alleging they acquired title to certain property purchased by six park districts by adverse possession.  *Houck*, 2007-Ohio-5586, at ¶ 4, 6.  The trial court

rejected their claim.  See *id.* at ¶ 7.   The appellate court "applied the general rule that adverse possession cannot be invoked against the state and its political subdivisions," *id.* at ¶ 10, and affirmed, *id.* at ¶ 7. The Supreme Court affirmed. *Id.* at ¶ 1.

**{¶29}** The Supreme Court framed the issue before it as whether real property owned by a park district established under R.C. Chapter 1545 can be acquired by adverse possession, an issue of first impression for it.  *Id.* at ¶ 1, 17.  In resolving this issue, the court stated that "the common law addressing whether adverse possession applies to various government entities provides guidance to our analysis."  *Id.* at ¶ 17.  It then set forth the common law as recited in paragraphs 23-25 of this decision.  The Supreme Court acknowledged that in all but one of those cases, as well as in the earlier cases on which they are based, the property in question was a public road, street, or highway, not an abandoned railroad bed as it was in *Houck*.  *Id.* at ¶ 23. However, it found that the nature of the property in question was not critical to its analysis.  *Id.*  Instead, it was "the general policies underpinning these decisions" that it found persuasive to its analysis and that "justify continued support of the rule that adverse possession does not apply against park-district property."  *Id.*, citing *Ohio Dept. of Transp. v. Sullivan*, 38 Ohio St.3d 137, 138-139 (1988).

**{¶30}** *Houck* explained that "[o]ne reason for precluding adverse possession of roads, streets, or highways is that it interferes with the *public use* of the property in question."  (Emphasis in original.)  *Id.* at ¶ 24, citing *Heddleston*, 52 Ohio St. at 465. *Houck* found that permitting adverse possession of park-district property would interfere with the public's enjoyment and use of park lands and a park district's obligation to conserve and protect park property. *Id.* at ¶ 25.  *Houck* also found that "the determination

in *Heddleston* that government entities cannot be expected to be as vigilant as private property owners in monitoring their property is particularly applicable to park districts." *Id.* at ¶ 27. In addition, *Houck* found that even if *Brown* remained viable law, it had been limited to school-board property, and "park districts have certain attributes, i.e., they exist to hold property in trust for the public and they are responsible for thousands of acres of property," which "both distinguish park districts from school districts and justify greater protection of park-district property." *Id.* at ¶ 28. *Houck* also noted that adverse possession is disfavored and found "such disfavor especially acute in this case because adverse possession of park property deprives the public of the enjoyment of park property and imposes a burdensome obligation on park districts to monitor their property." *Id.* at ¶ 29. Thus, *Houck* found "permitting adverse possession of park-district property is against public policy and the legal principles underlying adverse possession" and held "that property owned by a park district established pursuant to R.C. Chapter 1545 is not subject to adverse possession." *Id.* at ¶ 30.

{¶31} Kinkaid is correct that *Houck* did not establish a bright-line rule that political subdivisions are always immune to adverse possession claims regardless of the facts of the case, but *Houck* also did not create the bright-line rule Kinkaid suggests it did. In *Houck*, the Supreme Court narrowly framed the issue before it as whether property owned by a park district established under R.C. Chapter 1545 can be acquired by adverse possession. *Id.* at ¶ 1. In resolving that narrow issue, the court considered whether the underlying legal principles of adverse possession applied to park districts, determined they did not, and created a bright-line rule that property owned by a park district established under R.C. Chapter 1545 cannot be acquired by adverse possession. *Id.* at

¶ 1. *Houck* did not create a bright-line rule requiring that any time an adverse possession claim is brought against a political subdivision, the property is not immune to the claim unless the political subdivision shows that a public purpose is served by the property in dispute, that adverse possession would interfere with such purpose, and that the political subdivision did not have an obligation to monitor its property more closely than it did.  Nor does Kinkaid direct our attention to any binding authority creating such a rule.  Thus, the city did not have to show there was no genuine issue of material fact as to those issues. Even if the city had not used the Disputed Area for any purpose, as *Nusekabel* observes, "Undeveloped land is a precious commodity in today's crowded world, and a municipality should not lose its rights in a property, or the property itself, because it has not yet determined a suitable purpose for the land."  *Nusekabel*, 125 Ohio App.3d at 436 (1st Dist.).

{¶32}  Because adverse possession generally cannot be applied against a political subdivision, and no exception to this general rule applies, the trial court properly granted summary judgment to the city on Kinkaid's adverse possession counterclaim.   It is therefore unnecessary for us to consider Kinkaid's arguments regarding whether a genuine issue of material fact exists as to the elements of his adverse possession counterclaim.

### C.  Prescriptive Easement

{¶33}  Kinkaid maintains that the trial court erred when it granted the city summary judgment on his prescriptive easement counterclaim.  Kinkaid asserts that the trial court applied an incorrect legal standard when it referenced the clear and convincing evidence standard for this counterclaim. He claims that while a party asserting a prescriptive

easement claim bears this burden at trial, the party does not have this burden when responding to a summary judgment motion. He asserts that the city had the initial burden to demonstrate the absence of a genuine issue of material fact. He asserts that a prescriptive easement may be established where there has been open, notorious, adverse and continuous use of the property for 21 years, that the record show that facts concerning the use of the Disputed Area by him and his predecessors-in-interest are disputed, and that the city did not offer any affidavit or other evidence to demonstrate the absence of facts material to a prescriptive easement claim. He also asserts that the summary judgment entry "does not indicate that the case law applicable to adverse possession claims to property owned by a political subdivision applies to" his prescriptive easement counterclaim. But to the extent the city makes such an argument on appeal, he "adopts and incorporates" his arguments concerning his adverse possession counterclaim.

**{¶34}** Even if the trial court applied an incorrect legal standard or genuine issues of material fact exist as to the elements of a prescriptive easement, the trial court correctly dismissed Kinkaid's prescriptive easement counterclaim. "'[I]t is the definitely established law of this state that where the judgment is correct, a reviewing court is not authorized to reverse such judgment merely because erroneous reasons were assigned as the basis thereof.'" *Culp v. Olukoga*, 2013-Ohio-5211, ¶ 62 (4th Dist.), quoting *Agricultural Ins. Co. v. Constantine,* 144 Ohio St. 275, 284 (1944). "Thus, when a trial court has stated an erroneous basis for its judgment, an appellate court must nevertheless affirm the judgment if it is legally correct on other grounds." *Id.*, citing *Reynolds v. Budzik,* 134 Ohio

App.3d 844, 846, fn. 3 (6th Dist. 1999), and *Newcomb v. Dredge,* 105 Ohio App. 417, 424 (2d Dist.1957).

{¶35} In its summary judgment motion, the city argued that as a political subdivision, it was not subject to loss of its property by adverse possession or prescription. As we explained above, the general rule is that a political subdivision is not subject to loss of its property by adverse possession. "[A]dverse possession and prescription are analogous doctrines requiring most of the identical elements and were created in the common law for the similar purpose of putting land to its highest and best use." *Nusekabel*, 125 Ohio App.3d at 434 (1st Dist.). "'The distinction between the elements required to acquire a prescriptive easement and those required to acquire title by adverse possession is limited to the land's exclusive use.'" *Harris v. Dayton Power & Light Co.*, 2016-Ohio-517, ¶ 13 (2d Dist.), quoting *Vaughn v. Johnston,* 2005-Ohio-942, ¶ 11 (12th Dist.). "'Acquiring an easement by prescription differs from acquiring title by adverse possession, in that exclusivity is not an element required to establish an easement by prescription.'" *Id.*, quoting *Vaughn* at ¶ 11. Therefore, just as property of a political subdivision generally cannot be acquired by adverse possession, it also generally cannot be acquired by prescription. *See generally Nusekabel* at 435 ("property of a municipality is not subject to prescription or adverse possession, except as specifically provided by R.C. 2305.05"); *Neitz v. Village of Lakemore*, 2000 WL 1706384, *2 (9th Dist. Nov. 15, 2000) (agreeing with *Nusekabel*). At the trial level, Kinkaid did not argue that the large and valuable structures exception he claimed applied to his adverse possession counterclaim also applied to his prescriptive easement counterclaim. Even if he had, as we previously explained, the trial court, in addressing the adverse possession

counterclaim, found Kinkaid failed to demonstrate that he met that exception, and Kinkaid did not challenge this finding in his appellate brief.  Therefore, we conclude the trial court properly granted summary judgment to the city on Kinkaid's prescriptive easement counterclaim.

### D.  Equitable Estoppel

**{¶36}** Kinkaid maintains the trial court erred when it dismissed his counterclaim for easement by estoppel, i.e., the counterclaim he characterized as being for "equitable estoppel" at the trial level, when there are genuine issues of fact material to such claim. He claims "[a]n easement by estoppel may arise when a landowner permits another to expend money to improve the property in reliance on a purported easement."  He claims there is a "dispute of material fact" regarding whether the city permitted him or his predecessors-in-interest to improve the Disputed Area.

**{¶37}** Kinkaid has not demonstrated that the trial court erred when it dismissed his estoppel counterclaim.  As Kinkaid indicates, the trial court did not explain the reason for this dismissal.  However, as explained above, in the city's summary judgment motion, it argued that municipal property cannot be conveyed as a result of equitable estoppel because such a claim is actually an adverse possession claim, which is not permitted against a political subdivision, and that it only had authority to convey property in accordance with R.C. 721.03.  And "'"[i]t is reversible error to award summary judgment on grounds not specified in the motion for summary judgment."'"  *Troon Mgt., Ltd. v. Adams Family Trust*, 2023-Ohio-3489, ¶ 29 (4th Dist.), quoting *State ex rel. Sawicki v. Court of Common Pleas of Lucas Cty.*, 2009-Ohio-1523, ¶ 27, quoting *Patterson v. Ahmed*, 2008-Ohio-362, ¶ 14 (6th Dist.).  Therefore, we presume the court granted the

city summary judgment on the estoppel counterclaim for the reasons argued by the city below.

**{¶38}** In his appellate brief, Kinkaid makes no argument and cites no legal authority for the position that municipal property can be conveyed as a result of equitable estoppel. In his reply brief, he claims that in its appellee's brief, the city ignores his claim for equitable estoppel and "does not cite any authority that publicly-owned property is immune to easement claims based on estoppel." But as the appellant, Kinkaid bears the burden of affirmatively demonstrating error on appeal and substantiating his arguments in support thereof. *State v. Pleasant*, 2025-Ohio-115, ¶ 68 (4th Dist.). Accordingly, we conclude that Kinkaid failed in his burden to demonstrate the trial court erred when it dismissed his estoppel counterclaim.

### E. Unjust Enrichment

**{¶39}** Kinkaid maintains that the trial court erred when it dismissed his unjust enrichment counterclaim. Citing *Coventry Courts, LLC, v. Cuyahoga Cty.*, 2023-Ohio-1037 (8th Dist.) ("*Coventry Courts*"), he asserts that "[a] party may have an unjust enrichment claim against a political subdivision if there is no legal remedy available to the claimant." He asserts that he has no adequate remedy at law. He further asserts that his counterclaim alleged that he and his predecessors-in-interest made valuable improvements to the Disputed Area and that the city denied these allegations, creating a genuine dispute of material facts as to whether the city benefited from improvements to its property and whether retention of such benefits would be inequitable. He asserts that the city offered no affidavit or other evidence on this issue and that its unsupported

assertion that it did not authorize or want the garage on its property is insufficient to justify a grant of a summary judgment on the unjust enrichment counterclaim.

{¶40} Kinkaid has not demonstrated that the trial court erred when it dismissed his unjust enrichment counterclaim. As Kinkaid observes, the trial court did not explain the reason for its dismissal of this counterclaim. However, as we previously explained, in its summary judgment motion, the city asserted that a claim of unjust enrichment cannot be made against a political subdivision. The city maintained that unjust enrichment, while an equitable remedy, is based on theories of contract, and that the contractual powers of a municipal corporation are limited. The city relied on *Kraft Constr. Co.* for the position that all governmental liability ex contractu must be express and entered into in the prescribed manner and that a municipality is not liable on an implied contract or on a quantum meruit by reason of benefits received. The city relied on *Aquatic Renovations Sys., Inc.* for the position that because a municipality may not be held liable on the basis of a quasi-contract, it follows that a claim of quantum meruit or unjust enrichment against a municipality fails. The city asserted that it did not authorize or want the garage in the Disputed Area and could not be liable solely because it "may have received a benefit from an unsolicited act and trespass." Again, ""'[i]t is reversible error to award summary judgment on grounds not specified in the motion for summary judgment."'" *Troon Mgt., Ltd.*, 2023-Ohio-3489, at ¶ 29 (4th Dist.), quoting *State ex rel. Sawicki*, 2009-Ohio-1523, at ¶ 27, quoting *Patterson*, 2008-Ohio-362, at ¶ 14 (6th Dist.). Therefore, we presume the trial court granted the city summary judgment on the unjust enrichment counterclaim for the reasons argued by the city.

{¶41} In his appellate brief, Kinkaid suggests he can bring an unjust enrichment claim against the city, but he does not address the cases relied on by the city below and cites no legal authority relevant to the argument the city made to support its position that that it could not, as a matter of law, be liable for unjust enrichment. He directs us to *Coventry Courts.* In that case, the owner of certain real property filed a complaint against Cuyahoga County for fraud and unjust enrichment alleging the county had fraudulently inflated the value of the property and was unjustly enriched by an overpayment of taxes based on the fraudulent overvaluation. *Coventry Courts,* 2023-Ohio-1037, at ¶ 3, 7 (8th Dist.). The county argued that it was immune from liability pursuant to R.C. Chapter 2744, Ohio's Political Subdivision Tort Liability Act, because it is a political subdivision, and the trial court agreed and granted summary judgment to the county. *Id.* at ¶ 8-9. The Eighth District Court of Appeals held that the trial court erred in concluding the county was immune from the unjust enrichment claim under R.C. Chapter 2744 because it only applies to tort claims, not claims to recover improperly collected taxes and fines. *Id.* at ¶ 18. The appellate court still affirmed the trial court's judgment on the basis that unjust enrichment is an equitable claim, that an equitable remedy is improper where there is an adequate remedy at law, and that R.C. 2723.01 provided an adequate remedy at law, so an "unjust-enrichment claim, as a form of equitable relief, is not the proper remedy for recovering the overpayment of taxes." *Id.* at ¶ 20-24.

{¶42} *Coventry Courts* is inapposite. Kinkaid suggests that *Coventry Courts* supports the position that he can bring an unjust enrichment claim against the city in this case because he has no adequate remedy at law. But unlike the county in *Coventry Courts,* the city did not contend that it was immune from liability for unjust enrichment

under R.C. Chapter 2744.  Instead, the city argued that unjust enrichment is based on theories of contract, the contractual powers of a municipal corporation are limited, and governmental liability ex contractu must be express and entered into in the prescribed manner, so a municipality may not be held liable on the basis of a quasi-contract, and a claim of unjust enrichment against a municipality fails.  In *Coventry*, no such argument was considered by the appellate court.

{¶43} Accordingly, we conclude Kinkaid failed in his burden to demonstrate the trial court erred when it dismissed his unjust enrichment counterclaim.

## F.  Other Counterclaims

{¶44} Kinkaid does not make any arguments regarding the dismissal of his counterclaims for implied easement by prior use or by necessity and negligent misrepresentation, so we need not address them.

## G.  Conclusion

{¶45}  For the foregoing reasons, we conclude the trial court did not err by granting summary judgment to the city, declaring the city the owner of the real property in dispute free of all claims or interest of Kinkaid, and dismissing Kinkaid's counterclaims related to the property. We overrule the sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
      Michael D. Hess, Judge




### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**